UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| CLARK'S CARS AND PARTS, INC.,       )<br>                                                              )<br>                   Plaintiff,                        )<br>                                                              )<br>       v.                                                  )<br>                                                              )   Civil No. 04-208-B-W<br>MONTICELLO INSURANCE COMPANY )<br>and ST. PAUL FIRE AND MARINE        )<br>INSURANCE COMPANY,                        )<br>                                                              )<br>                   Defendants.                   ) | |

**RECOMMENDED DECISION ON CROSS MOTIONS
FOR SUMMARY JUDGMENT**

This Recommended Decision addresses three motions for summary judgment in this declaratory judgment and breach of contract action filed by Clark's Cars and Parts, Inc. ("Clark's"), against its insurers, Monticello Insurance Company and St. Paul Fire and Marine Insurance Company.[1] Clark's seeks with this action to impose on the defendant insurance companies a duty to defend Clark's in relation to an underlying actions against Clark's pending in state court, in which it is alleged, among other things, that Clark's negligently caused property damage by contaminating the underlying plaintiffs' well water by spilling gasoline onto the grounds of a nearby junkyard in the course of Clark's car crushing operations. The defendants maintain that they have no duty to defend by virtue of pollution exclusions contained in the subject insurance policies. I recommend that the Court grant the defendants' motions (Docket Nos. 29 & 31) and deny Clark's motion (Docket No. 30).

---

[1]   Clark's complaint contains three counts. The parties have stipulated to the dismissal of the third count. (Stip. of Dismissal, Docket No. 28.)

## FACTS

The parties' have stipulated to the following facts (Joint Stip., Docket No. 27).

1. Clark's Cars and Parts, Inc. (hereinafter "Clark's") is a Maine corporation with a principal place of business off Outlet Road, Hallowell, Maine.

2. Monticello Insurance Company (hereinafter "Monticello") is a foreign insurer authorized to conduct business in the State of Maine.

3. St. Paul Surplus Lines Insurance Company (hereinafter "St. Paul") is a foreign insurer authorized to conduct business in the State of Maine.

4. Clark's is a defendant in a lawsuit brought by Charles and Audrey Cogswell (together, "the Cogswells"). A true and accurate copy of the Complaint served on Clark's is attached to the joint stipulation as Exhibit A.

5. Clark's has sought a defense to the Complaint under an insurance policy issued by St. Paul Surplus Lines Insurance Co. (the "St. Paul Policy"), which was in effect from July 13, 2001, through July 13, 2002, and renewed through July 13, 2004. A true and correct copy of the St. Paul Policy, including renewal endorsements, is attached to the joint stipulation as Exhibit B.

6. Clark's has also sought a defense to the Complaint under Monticello Policy No. MCL332932, effective from July 13, 1995, to July 13, 1998; and Monticello Policy No. MCL 334281, effective from July 13, 1998, to July 13, 2001.

7. Monticello ceased writing new policies, unless obligated by state law, in or about June 2001.

8. As a result, Monticello no longer employs any underwriters. All Monticello offices have been closed.

9. Because of the passage of time any claims under the Monticello policies are handled in California, and in the absence of any underwriters, it is impossible for anyone on behalf of Monticello to certify a true and correct copy of any former Monticello insurance policy.

10. Thomas O. Mills, a Claim Specialist for Monticello Insurance Company, searched for Monticello policies MCL332932 and MCL334281, allegedly issued to Clark's Cars and Parts, Inc., but was unable to locate them.

11. Mr. Mills reviewed a copy of Monticello policy MCL334281 which was sent to him by Attorney John Whitman, who advised that it had been provided to him by counsel for Clark's Cars and Parts, Inc. By comparing this copy of the policy with the list of forms and endorsements contained within it, Mr. Mills determined that two forms are missing: ISO Form CG 2104 (11/85), and Monticello Form PL4150JXM (4/90).

12. Mr. Mills located a sample copy of ISO Form CG 2104 (11/85), and added it to the copy of Policy MCL334281 which was provided by counsel for Clark's Cars and Parts, Inc. Attached to the joint stipulation as Exhibit C is what appears to be a complete copy of Monticello Policy MCL334281, lacking only the policy jacket. This is the most complete copy of Policy MCL334281 that can be provided by Monticello at this time.

13. Monticello issued Policy Number MCL334281 to Clark's Cars & Parts Inc. for the policy period 7/13/98 to 7/13/99. Policy Number MCL 334281 was renewed for the period of 7/13/99 to 7/13/00 and again for the period of 7/13/00 to 7/13/01 without any modifications to the policy terms that would affect the coverage determination in this case.

14. The Cogswell lawsuit has been stayed since January 10, 2005, by order of the Kennebec County Superior Court.

15. To date, both Defendant St. Paul and Defendant Monticello have refused to defend Clarks in the Cogswell litigation.

### *The Underlying Complaint*

In the underlying complaint (Joint Stip. Ex. A) the Cogswells allege that premises they own in Windsor, Maine, were damaged by Clark's and one David Coombs, the owner of an adjacent property on which Coombs operates an auto salvage and junkyard operation. (Id.) According to the allegations, Clark's and Coombs participated in car crushing operations on the Coombs premises that resulted in the spilling of gasoline (including the additive MTBE) onto the ground of the premises, which gasoline migrated into the Cogswells' groundwater and well water, rendering the Cogswells' premises substantially worthless. (Id.) The Cogswells recite generalized claims sounding in negligence and nuisance. (Id.)

### *The Saint Paul Policy (Joint Stip. Ex . B)*

St. Paul's motion for summary judgment is premised on two sections of its insurance policy. According to St. Paul, its policy does not extend coverage to Clark's for the Cogswells' claims because of a premises limitation, which restricts coverage to certain defined premises, and because of a pollution exclusion. I reproduce the relevant language of these provisions here. The first provision is the "Described Premises or Projects Limitation Endorsement."

**DESCRIBED PREMISES OR PROJECTS LIMITATION ENDORSEMENT**

This endorsement changes your Commercial General Liability Protection.

**How Coverage Is Changed**

The following is added to the What the Agreement Covers Section.  This change limits coverage.

**Described premises or projects.**  We'll apply this agreement only to covered injury or damage or medical expenses that result from:

• The ownership, maintenance, or use of the premises described in the *Coverage Summary*;

• Work done anywhere that's necessary or incidental to the ownership, maintenance, or use of such premises; or

• The project described in the *Coverage Summary*.

(Joint Stip. Ex. B at 0041 (emphasis supplied)).  The policy's coverage summary states:

> 43384[2] (1/96)  Described Premises or Projects Limitation Endorsement
> Described Premises:   Off Outlet Road, Westview Estates,
> Farmingdale, ME

(Id. at 0010.)  The second material provision of the St. Paul policy is the pollution exclusion.

> **Pollution injury or damage.** We won't cover injury or damage . . . that result from pollution at, on, in, from any:
> • protected person's premises;
> • waste site; or
> • protected person's work site.
> . . . .
> But we won't apply this exclusion to . . . .
> • bodily injury or property damage that results from your products or your completed work, other than waste products or completed work . . . .
> . . . .
> *Pollution* means any actual, alleged, or threatened discharge, dispersal, escape, migration, release or seepage of any pollutant.
>
> *Pollutant* means any solid, liquid, gaseous, or thermal irritant or contaminant, including:

---

[2]   The Described Premises or Projects Limitation Endorsement at page 41 of the exhibit is likewise identified at the bottom of the page as Endorsement 43384.

4

- smoke, vapors, soot, fumes;
- acids, alkalis, chemicals; and
- waste.

*Waste* includes materials to be recycled, reconditioned, or reclaimed.
. . . .
*Waste site* means any premises, site, or location that is or was at any time used by or for any protected person or others for the handling, storage, disposal, processing or treatment of waste.

(Id. at 0035-36.)

### *The Monticello Policy (Joint Stip. Ex. C)*

Like St. Paul, Monticello bases its summary judgment motion on a designated premises endorsement and a pollution exclusion. Those provisions are set out below.

**Exclusions:**

This insurance does not apply to:
. . . .
**f. Pollution**
   (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
      (a) At or from premises which is or was at any time owned or occupied or rented or loaned to any insured;
      (b) At or from any premises, site, or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;
      (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or
      (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on behalf of the named insured are performing operations:
         (i) if the pollutants are brought on or to the premises, site or location in connection with such operations… by such insured, contractor or subcontractor; or
         (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in way respond to, or assess the effects of pollutants.
      . . . .
   (2) . . . .

5

> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(Joint Stip. Ex. C at 00003-00004.) The Monticello policy also includes a "Limitation of Coverage to Designated Premises or Project." (Id. at 00017.) This provision reads as follows.

> This insurance applies only to … "property damage" …arising out of:
>
> > 1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises . . . .

The "Schedule" does not identify any premises. (Id.) However, it does indicate immediately below the "premises" and "project" entries: "(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)" (Id.) The declarations page of the policy provides the following "Description of Business and Location of Premises":

> Location of All Premises You Own, Rent or Occupy:
>
> > Off Outlet Rd., West View Estates
> > Farmingdale, ME

(Id. at 00001.)

### DISCUSSION

"The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required." Plumley v. S. Container, Inc., 303 F.3d 364, 368 (1st Cir. 2002). A party moving for summary judgment is entitled to judgment in its favor only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its resolution would "affect the outcome of the suit under the

governing law," and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In reviewing the record for a genuine issue of material fact, the Court must view the summary judgment facts in the light most favorable to the nonmoving party and credit all favorable inferences that might reasonably be drawn from the facts without resort to speculation. Merchants Ins. Co. v. United States Fid. & Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998). If such facts and inferences could support a favorable verdict for the nonmoving party, then there is a trial-worthy controversy and summary judgment must be denied. ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002).

Pursuant to Maine common law, it is a question of law whether an insurer owes its insured a duty to defend. Bucci v. Essex Ins. Co., 393 F.3d 285, 290 (1st Cir. 2005). "Maine resolves the question of 'whether there exists a duty to defend . . . by comparing the [underlying] complaint with the terms of the insurance contract.'" Id. (quoting Elliott v. Hanover Ins. Co., 711 A.2d 1310, 1312 (Me. 1998)). For the duty to defend to exist, the allegations of the underlying complaint must raise a "potential for liability within the coverage and contain[] no allegations of fact which would necessarily exclude coverage." Travelers Indem. Co. v. Dingwell, 414 A.2d 220, 227 (1980). "This is the case even when the undisputed facts show the injury in question was not covered by the policy." Bucci, 393 F.3d at 290.

> Under this comparison test, the insurer has a duty to defend if the underlying complaint discloses a "potential or a possibility" for liability within the policy's coverage. Significantly, the duty to defend is broader than the duty to indemnify, and an insurer may have to defend before it is clear whether there is a duty to indemnify. Maine requires that insurance policies be interpreted most strongly against the insurer. Any ambiguity must be resolved in favor of a duty to defend.

7

Id. (some internal quotation marks omitted) (citing and quoting Elliott, 711 A.2d at 1312; Commercial Union Ins. Co. v. Royal Ins. Co., 658 A.2d 1081, 1083 (Me. 1995); Mass. Bay Ins. Co. v. Ferraiolo Constr. Co., 584 A.2d 608, 609 (Me. 1990); and Baybutt Constr. Corp. v. Commercial Union Ins. Co., 455 A.2d 914, 921 (Me. 1983), overruled on other grounds, Peerless Ins. Co. v. Brennon, 564 A.2d 383 (Me. 1989)).

A.    **St. Paul Has No Duty to Defend**

St. Paul argues that its pollution exclusion unambiguously bars coverage for the underlying plaintiffs' claims because the spillage or release of gasoline or MTBE at the Coombs premises (a) was pollution and (b) occurred "at, on, in or from [a] waste site" and (c) involved a "waste pollutant." (St. Paul's Mot. Summ. J. at 5-6, Docket No. 29.) In addition, St. Paul argues that its premises limitation precludes coverage because Coombs premises are outside the scope of the Clark premises insured under the St. Paul policy. (Id. at 8-9.) Clark's argues in its competing summary judgment motion that a potential for coverage does exist because the Coombs premises are not a waste cite and because of the exception to the pollution exclusion: that St. Paul will not apply the exclusion to property damage that results from "your completed work, other than waste products or completed work." (Clark's Mot. Summ. J. at 11, Docket No. 30.) As for the premises limitation, Clark's argues that the underlying complaint does not exclude the possibility that Clark's car crushing work at the Coombs premises was necessary or incidental to the use and ownership of Clark's own premises. (Id. at 12.)

The language of the St. Paul pollution exclusion is clear. Coverage will not extend to damage arising from pollution occurring at a waste site. An automobile junkyard is clearly a waste site, as that term is defined in the policy as, among other things, a site or location that is or was at any time used for handling, storing or processing waste, and the policy's definition of

8

waste includes something to be recycled, reconditioned, or reclaimed. I fail to comprehend how the pollution alleged in the underlying complaint does not fall squarely within the language of the pollution exclusion at issue. Clark's argues that the allegations of the underlying complaint do not concern pollution at Clark's premises or even at Clark's work site. (Clark's Opp'n to St. Paul's Mot. at 7, Docket No. 35.) The fact that the car crushing activity is not alleged to have occurred on or at a Clark's premises or a Clark's work site is not conclusive of St. Paul's motion because the Coombs junkyard is a waste site and the policy clearly excludes coverage for pollution occurring at a waste site, regardless of who owns it. Clark's also tries to blur the distinction between what is waste and what is a pollutant, arguing that junk cars are not pollutants. (Id. at 10.) In any event, Clark's acknowledges that gasoline is a pollutant (id.) and the complaint alleges that gasoline was released during car crushing operations at the Coombs junkyard, a location used for, among other things, the handling of waste. Because the Coombs premises are the location from which the gasoline was allegedly released and because those premises meet the definition of waste site by virtue of the fact that junk or "waste" cars are, at the very least, "handled" there[3], the allegations of the underlying complaint fall squarely within St. Paul's pollution exclusion.

      Clark's also argues that St. Paul's motion "ignores" a "significant exception" to the pollution exclusion. (Id. at 12.) According to Clark's, the automobiles it crushes at the Coombs premises could be proved to be Clark's "products or . . . completed work, other than waste products or completed work." (Id.) Although Clark's maintains that this exception is potentially applicable (id. at 13), Clark's does not even attempt to articulate any set of facts that might be proven in the underlying litigation consistent with this theory. I fail to understand how this exception to the exclusion could apply under the circumstances alleged. Although the crushing

---

[3]    It is difficult to conceive of Clark's and Coombs crushing non-waste automobiles.

of cars might be construed to result in a "product" or "completed work," such a product or work would clearly consist of a waste product or waste completed work under the policy's definition of waste: a recycled or reconditioned junk car. The application of the St. Paul pollution exclusion is clear and makes unnecessary further consideration of the premises limitation.

**B.     Monticello Has No Duty to Defend**

Monticello argues that its policy does not extend coverage for the damages alleged in the underlying complaint because the Coombs premises were used for the handling, storage, disposal and processing of materials to be recycled or reclaimed, citing subsection (f)(1)(b) of its policy. (Monticello's Mot. Summ. J. at 11, Docket No. 31.) In addition, Monticello argues that coverage is precluded by operation of subsections (f)(1)(c) and (d). (Id. at 11-12.) Clark's disagrees with these assertions, contending in its motion for summary judgment that subsections (b) and (c) do not apply because there are no allegations in the underlying complaint that Clark's was involved in handling, disposing or processing waste, only that it crushed junk cars. (Clark's Mot. Summ. J. at 6.) As for subsection (d), Clark's argues that there are no allegations suggesting it brought the junk cars or gasoline to the Coombs premises, only that it crushed cars while on the premises (thereby spilling gasoline onto the premises). (Id.) In addition, Clark's observed that the Monticello policy does not expressly exclude coverage for damages arising from the "seepage" or "migration" of pollution, only for actual, alleged or threatened discharges, dispersals, releases or the escape of pollutants. (Id. at 7-8.)

In my view, the subsection (f)(1)(b) exclusion clearly applies to preclude coverage for the damages alleged in the underlying complaint. Pursuant to that provision, the Monticello policy does not afford coverage for property damage arising out of the dispersal or release of pollutants at any premises used for the handling, storage, disposal or processing of waste. Because the

10

underlying complaint alleges damages based on the release of gasoline and MTBE into the groundwater from car crushing operations conducted by Clark's at the Coombs junkyard, it falls squarely within the broad pollution exclusion of the Monticello policy.  Clark's makes much of the fact that a prior version of the Monticello policy included the terms seepage and migration in the list of means by which pollutants might cause damage and observes that the underlying complaint alleges injury caused by the migration of MTBE into the Cogswells' well water.  (Clark's Opp'n to Monticello's Mot. at 8, Docket No. 34.)  The problem with this argument is that Clark's fails to articulate what set of facts might be proven in the underlying litigation that could possibly justify an imposition of liability on Clark's for the mere migration of pollutants absent any conduct by Clark's that caused or contributed to the release or dispersal of gasoline in the first place.  In other words, the passive agency of migration is subsumed within the language of the exclusion because it is either the natural sequela of an initial dispersal or release of gasoline or simply redundant of the terms "dispersal" and "release."  Clark's also argues that junk cars are not pollutants.  (Id. at 9-10.)  This is beside the point.  The pollutant at issue in the underlying complaint is obviously the gasoline or MTBE that has allegedly contaminated the Cogswells' well water.  The junk cars are, thus, not the pollutant, but the "waste" that, according to the underlying complaint is allegedly handled, stored or processed at the Coombs premises.  The application of the pollution exclusion is clear and makes consideration of the premises limitation unnecessary.

## CONCLUSION

For the reasons stated above, I **RECOMMEND** that the Court **DENY** Clark's motion for summary judgment (Docket No. 30) and **GRANT** the motions filed by St. Paul Insurance Company (Docket No. 29) and Monticello Insurance Company (Docket No. 31).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated: November 4, 2005

12